IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMPLAINT OF IMPERIAL TOWING ) <br> INC., as Owner *Pro Hac Vice* and ) <br> Charterer of the Motor Vessel Carl L. ) <br> Johnson, FOR EXONERATION FROM OR ) <br> LIMITATION ON LIABILITY ) <br> ) | Civil Action No. 11-1371 <br><br> Judge Mark R. Hornak |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is U.S. Steel Corp.'s ("U.S. Steel") Motion for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), ECF No. 72, wherein U.S. Steel requests that this Court amend its November 6, 2012 Order ("Order"), ECF No. 70, and accompanying Opinion, ECF No. 69, *In re Imperial Towing Inc.*, CIV.A. 11-1371, 2012 WL 5409831 (W.D. Pa. Nov. 6, 2012) ("Opinion") to include the requisite statement required by 28 U.S.C. § 1292(b) to certify this matter to our Court of Appeals. Having considered U.S. Steel's Motion and Brief in Support, ECF No. 73, and Imperial Towing, Inc.'s ("Imperial") Response, ECF No. 75, and Memorandum of Law in Opposition, ECF No. 74,[1] for the reasons that follow, U.S. Steel's Motion is denied.

### I. BACKGROUND

The facts of this case are relayed in detail in the Opinion. Imperial was the owner *pro hac vice* and bare boat charterer of the towboat M/V Carl L. Johnson. On April 27, 2011, certain barges that the M/V Carl L. Johnson was towing broke free, including one which carried steel

---

[1] Two other parties to the litigation, Campbell Transportation Company, Inc. (and its affiliates) and American Commercial Lines, LLC have filed documents indicating their joinder in Imperial's Opposition to the Motion, ECF Nos. 76, 79.

coils owned by U.S. Steel, causing the coils to sink to the bottom of the Ohio River. U.S. Steel has estimated that 1,566.49 tons of steel coils were lost, purportedly valued at amounts ranging from $991 to $1,212 per net ton, with a total loss of approximately $1.8 million.[2] *See* Opinion, at *9. On May 29, 2012, Imperial filed a Motion for Partial Summary Judgment, seeking to limit Imperial's liability to U.S. Steel for any damages U.S. Steel had suffered to the terms of a Valuation and Limitation on Liability Clause contained in a Contract of Affreightment that U.S. Steel and another party, American Commercial Barge Lines, Inc. ("ACBL") had signed. *See* ECF No. 61 Ex. B. During those proceedings, the parties represented to the Court that approximately $640,000 in salvage value for the steel coils had been recovered by ACBL. *See* Opinion, at *9. On November 6, 2012, this Court's Order and Opinion granted that motion, holding that the provisions of the Contract of Affreightment applied equally to Imperial, and that

> [1] Imperial's liability to U.S. Steel is limited to $700 per ton of cargo lost or damaged multiplied by the actual weight in tons or fraction of tons.
>
> [2] U.S. Steel may not recover from Imperial beyond the above limitation, whether by receipt of any salvage proceeds or otherwise. However, Imperial's liability to U.S. Steel may not be reduced by salvage proceeds that have been recovered and retained by any entity other than U.S. Steel.

Order; *see* Opinion, at *11. U.S. Steel now requests that this Court certify part (2) of that Order for interlocutory appeal.

## II. DISCUSSION

Under 28 U.S.C. § 1292(b), a District Court may certify for interlocutory appeal a non-final order if the order [1] "involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*; *see Simon v. United States*, 341

---

[2] The parties have not stipulated to the exact weight of the steel coils or their original value, and the Court does not find these facts here. Rather, the Court finds it helpful to state the approximations given by the parties as of this date to illustrate roughly the amount of money implicated in this action.

2

F.3d 193, 199 (3d Cir. 2003). The certification decision rests in the sound discretion of the District Court, which may decline such request even if the criteria are present. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976). Section 1292(b) operates as an exception to the general rule that only final decisions of a District Court may be appealed, and thus is to be applied "only sparingly and in exceptional circumstances." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 708 (M.D. Pa. 2009) (internal quotation omitted); *see also L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d 603, 608 (E.D. Pa. 2008) (certification appropriate only if "exceptional circumstances justify a departure from the basic policy against piecemeal litigation"). Here, the Order involves a controlling question of law because its "incorrect disposition would constitute reversible error if presented on final appeal." *Chocolate Confectionary*, 607 F. Supp. 2d at 705. Therefore, the issue now turns to a consideration of the remaining factors under 28 U.S.C. § 1292(b).

## A. Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion exists when there is genuine doubt or conflicting precedent as to the correct legal standard. *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008). Conflicting and contradictory opinions can provide substantial grounds for a difference of opinion, as can the absence of controlling law on a particular issue, *id.*, although the fact that an action raises a question of first impression is not alone sufficient to support certification, *Cuttic v. Corzer-Chester Med. Ctr.*, 806 F. Supp. 2d 796, 805 (E.D. Pa. 2011) (quoting *Shaup v. Fredrickson*, No. 97-72260, 1998 WL 800321, at *3 (E.D. Pa. Nov. 17, 1998) ("If questions of first impression alone were sufficient to warrant certification for an immediate appeal, our Court of Appeals would be besieged with piecemeal interlocutory appeals.")).

3

The Contract of Affreightment stated:

> 15. CARGO VALUATION: *In consideration of the bargained for and agreed rates set forth herein, it is expressly agreed that the cargo described herein is hereby valued at not in excess of $700.00 per ton.* Carrier [ACBL] shall not be liable for and Shipper [U.S. Steel] hereby agrees to . . . hold harmless Carrier . . . for any loss or damage to or expense in connection with any article shipped *in an amount exceeding the per ton valuation set forth above* multiplied by the actual weight in tons (2,000 lbs.) or fraction of tons. *In no case shall Carrier's liability exceed the actual value of the article shipped.*

ECF No. 61 Ex. B ¶ 15 (emphasis added); Opinion, at *1. U.S. Steel argues that this Court erred in interpreting the contract to hold that Imperial's liability to U.S. Steel would be $700 per ton of cargo lost *minus* any salvage actually recovered by U.S. Steel, rather than $700 per ton *plus* salvage.

In reaching its conclusion, the Court reasoned that the general rule in maritime law is that in a total loss or constructive total loss situation, damages are calculated by market value of the property lost less salvage. *See The Anna Maria*, 15 U.S. 327 (1817); *DiMillo v. Sheepscot Pilots, Inc.*, 870 F.2d 746, 751 (1st Cir. 1989). This is a corollary of the general rule of compensatory damages in contract law – to 'make whole' the party who was injured. *See Paper Magic Group, Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 463 n.3 (3d Cir. 2003). But here, U.S. Steel agreed by contract to do more than limit the amount it could *recover* in seeking to be made whole, as might be the case in a more common limitation on liability clause. Rather, it stipulated to the *value* of the cargo itself, marking that agreed-upon value instead as the point at which U.S. Steel would be "made whole." This is supported by the title of the paragraph, "CARGO VALUATION," and its plain language, "it is expressly agreed that the cargo described herein is hereby valued as not in excess of $700.00 per ton." ECF No. 61 Ex. B ¶ 15. As the Court explained in the Opinion, the parties established their "express understanding that whatever the

4

value of a ton of cargo outside the contract is, for the purposes of the contract, it is not more than $700." Opinion, at *10.[3]

Therefore, to give effect to the limitation on liability clause, the proper calculation of damages and liability in this case must be based on the agreed contractual valuation (no more than $700 per ton), less any salvage actually received by U.S. Steel. Neither the Court nor the parties was able to locate any case law directly supporting or contradicting this proposition. However, the Court reasoned that this result was dictated by a plain reading of the contractual language, by principles of contract law, and by common sense. *Id.* To rule otherwise would grant U.S. Steel a windfall by allowing recovery in excess of the specifically bargained-for $700 per ton valuation when salvage is present, or would encourage waste by incentivizing Imperial not to recover the coils. *Id.*

In contrast, U.S. Steel has not offered any reason grounded in case law, precepts of contract law, or public policy to advance its argument. First, it asserts the absence of legal precedent as dispositive of this matter. *See* U.S. Steel Br. Supp. at 4, 6. Second, it reasserts its prior argument that because the limitation on liability clause states, "In no case shall Carrier's liability exceed the actual value of the article shipped," ECF No. 61 Ex. B ¶ 15, the contract (and the Court's interpretation of it) provides "evidence . . . that there is a distinction between market value and the contractual limitation." U.S. Steel Br. Supp. at 5.

---

[3] Adherence to this valuation might present a thornier issue in a situation where the value of the coils *as salvaged* exceeded $700 per ton, which might result in the carrier profiting from the loss of the coils if it has obtained the salvage value (i.e., if the contractual value is X, and the salvage value is X+1). However, that contingency is not the case here, and so the Court need not address its consequences. It is also certainly possible that in that case, there would not be a "total loss" or "constructive total loss" that is ordinarily present when the salvage rule cited by U.S. Steel is invoked. *See The Anna Maria*, 15 U.S. at 335; *DiMillo*, 870 F.2d at 751; *Paper Magic*, 318 F.3d at 463 n.3. Here, it is clear that the salvage value of the coils (approximately $640,000) is far below the valuation/limitation of approximately $1.1 million, and so no such windfall is generated to Imperial or any other salvaging entity who might be liable to U.S. Steel under the provisions of the Himalaya Clause.

5

There is a distinction. That is the purpose of a contract setting a specific, agreed-upon valuation and limitation. But as the Court noted in its Opinion, the only reasonable meaning of that sentence, read along with the valuation of the cargo as *"not in excess of* $700 per ton" is that actual value will serve as the proper valuation and limit of Imperial's liability if, *and only if,* "actual" market value is *less than* $700 per ton. Opinion, at *10 (emphasis added). But when, as here, market value is allegedly in excess of $700 per ton, the contract is clear that that benchmark becomes the valuation of the coils and the upper limit of Imperial's liability, whether or not salvage is present. U.S. Steel has offered no principled or normative reason why this should not be the case.

Whether or not this Court has erred in its interpretation of the contract, U.S. Steel has not demonstrated that there is an alternate interpretation with the kind and level of support such that it can serve as a substantial ground for a difference of opinion. Because U.S. Steel has demonstrated only that it disagrees with this Court's analysis, *see Chocolate Confectionary*, 607 F. Supp. 2d at 706, and not that there is a "substantial ground for a difference of opinion," this factor is not met.

### B. Materially Advances the Termination of the Litigation

Even if there were a substantial ground for difference of opinion, certification for interlocutory appeal would still be inappropriate because the resolution of that issue would not materially advance the ultimate termination of the litigation. Factors that a Court should consider in determining whether an immediate appeal would materially advance the outcome of the litigation include "(1) whether the need for trial would be eliminated; (2) whether the trial would be simplified by the elimination of complex issues; and (3) whether discovery could be conducted more expeditiously and at less expense to the parties." *Knipe*, 583 F. Supp. 2d at 600

6

(internal quotation omitted). "When litigation will be conducted in substantially the same manner regardless of [the Court of Appeals'] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994).

U.S. Steel argues that what it contends is the unclear status of the salvage money in the damage calculus at issue, approximately $640,000, "risks creating a logjam in any potential settlement negotiations" and affects the recovery of other parties involved in the litigation who will receive less or more of Imperial's overall limitation on liability (i.e., the value of the M/V Carl L. Johnson) based on U.S. Steel's recovery.[4] U.S. Steel Br. Supp. at 5-6. In so arguing, U.S. Steel has failed to demonstrate how any of the factors listed above are met. What is at stake in the ruling challenged here is the dollar amount of U.S. Steel's recovery, which may or may not affect the dollar amount obligations (by proportionately smaller numbers) of other claimants. The adjudication of this issue by the Third Circuit would not in any way affect or alter the necessity of trial, the trajectory of discovery, the claims and defenses at issue, or the participation of any parties in the action. The added time and cost of an appeal would delay, rather than expedite, the advancement of the litigation in this case. U.S. Steel's assertion that settlement negotiations might proceed more smoothly if this issue were resolved by the Court of Appeals, standing alone, does not demonstrate that litigation would be materially advanced. *See Ashmore v. Ne. Petrol. Div. of Cargill, Inc.*, 855 F. Supp. 438, 440 (D. Me. 1994) ("increased probability of settlement" alone does not materially advance outcome of litigation). Because almost any material decision made by a tribunal in the course of litigation in some way alters the calculus of settlement negotiations between parties, a finding otherwise would convert the interlocutory

---

[4] It is noteworthy that two of the four other Claimants in this case have opposed U.S. Steel's Motion, and therefore have seemingly rejected the contention that an interlocutory appeal will facilitate settlement discussions.

appeal of orders from being the exception to being the rule. It no longer would be a measure reserved for exceptional circumstances.

Because the Court concludes that there is not a substantial ground for difference of opinion regarding the Order and Opinion, and that an interlocutory appeal would not materially advance the termination of the litigation, U.S. Steel's Motion for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied. An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: December 13, 2012

cc: All counsel of record